IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TYLER FRANKLIN, Individually,
and as Administrator of the Estate of
JOHN HUNTER FRANKLIN,

                Plaintiff,

v.                                       CIVIL ACTION NO. 3:23-0608

CORPORAL GARRETT WILLIAMSON,
CORPORAL JASON WORKMAN,
TRAINING OFFICER FRED FERGUSON, and
CORRECTIONAL OFFICER SAMUEL ADKINS,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Corporal Jason Workman's Motion to Dismiss (ECF No. 94) and Corporal Garrett Williamson's and Officer Samuel Adkins' Motion to Dismiss Plaintiff's Second Amended Complaint. ECF No. 96. Plaintiff Tyler Franklin, individually, and as the Administrator of the Estate of John Hunter Franklin, opposes both motions. Also pending is Defendants Williamson, Workman, and Adkins' Joint Motion to Stay Discovery Pending Resolution of their Motions to Dismiss. ECF No. 112. For the following reasons, the Court **GRANTS** the Motions to Dismiss by Defendants Williamson, Adkins, and Workman and **DENIES AS MOOT** their Motion to Stay.

**I.**
**FACTUAL AND**
**PROCEDURAL BACKGROUND**

Decedent John Hunter Franklin was incarcerated at the Western Regional Jail (WRJ) on January 18, 2021. *Sec. Am. Compl.* ¶11. Upon intake, WRJ officials were informed that Mr.

Franklin suffered from mental illness, and it was noted that he had "'extreme paranoia.'" *Id*. ¶¶12, 14. Mr. Franklin also was assessed to be a "high risk of suicide." *Id.* ¶17.

On September 13, 2021, Mr. Franklin was housed in a segregated unit and gave Defendant Workman a note asking to be moved to suicide watch. *Id*. ¶¶26, 27. When asked why he wanted moved, Mr. Franklin reportedly told Defendant Workman that he believed another inmate was going to kill him. *Id*. ¶28. According to Plaintiff, Defendant Workman did not read the entire note, but he advised Mr. Franklin that "no inmate can enter his locked cell." *Id*. ¶29. Defendant Workman said that he was instructed by Defendant Ferguson not to enter the incident in Mr. Franklin's daily log. *Id*. ¶30. Defendant Workman also did not notify medical staff. *Id.* Plaintiff alleges that "Defendant Workman failed to take any reasonable steps to obtain medical assistance that John Franklin expressly requested and obviously needed. Defendant Workman also failed to take any measures whatsoever to protect John Franklin after this incident, including alerting medical staff or doing a cell contraband check." *Id*. ¶31. Later that day, Mr. Franklin committed suicide.[1]

On September 11, 2023, just two days shy of the two-year statute of limitations, Plaintiff filed this action. In the original Complaint, Plaintiff named PrimeCare Medical, Inc., PrimeCare Medical of West Virginia, Inc., PsiMed, Inc., The West Virginia Division of Corrections and Rehabilitation (WVDCR), and John/Jane Doe Correctional Officers as Defendants. Before any Defendant was served, Plaintiff filed an Amended Complaint (ECF No. 4) as a matter of course pursuant to Rule 15 of the Federal Rules of Civil Procedure. In the Amended Complaint, Plaintiff removed PrimeCare Medical, Inc. as a Defendant and refashioned his claims against the remaining

---

[1]Plaintiff alleges several other facts related to Defendant Williamson, but those allegations are unnecessary to discuss for purposes of the current motions.

-2-

Defendants.[2] The Amended Complaint also continued to assert claims against the unknown correctional officers. On November 21, 2023, the West Virginia Secretary of State accepted service of the Amended Complaint on behalf of the remaining named Defendants.

On December 12, 2023, the WVDCR filed a Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 17. The motion became ripe on January 2, 2024. Approximately two weeks later, Defendant PrimeCare Medical of West Virginia, Inc. filed a suggestion of bankruptcy, and, upon agreement by Plaintiff and the WVDCR, the action was stayed on February 16, 2024, pending the conclusion of the bankruptcy proceedings. *Order*, ECF No. 28. The Court also denied the WVDCR's Motion to Dismiss without prejudice. *Id*.

On May 28, 2024, the Court lifted the stay upon being notified that the bankruptcy proceedings were closed. Two days later, the WVDCR renewed its Motion to Dismiss (ECF No. 34) and, on June 25, 2024, it moved to stay all discovery pending resolution of its motion.[3] On July 17, 2024, the Court stayed all future deadlines. *Order*, ECF No. 54.

On August 13, 2024, the parties stipulated to dismissing PsiMed, Inc. as a Defendant. *Stip. of Dis. of PsiMed, Inc.* (Aug. 13, 2024), ECF No. 57. Thereafter, in early 2025, Plaintiff settled with PrimeCare Medical of West Virginia, Inc. *See Final Order Approving Settlement of Estate Claim* (Mar. 11, 2025), ECF No. 72. On March 24, 2025, the Court granted the WVDCR's Motion to Dismiss and denied its motion to stay of discovery as moot. *Mem. Op. and Order*, ECF No. 74.

---

[2] In addition, "The West Virginia Division of Corrections and Rehabilitation" was terminated, and the WVDCR was added simply as "West Virginia Division of Corrections and Rehabilitation" in the style of the case. *Am. Compl.*, at 1.

[3] PrimeCare Medical of West Virginia, Inc. requested that the Court grant the WVDCR's motion. *Def. PrimeCare Medical of West Virginia, Inc.'s Resp. to Def. the WVDCR's Motion to Stay Discovery Pending Resolution of Renewed Mot. to Dismiss* (June 27, 2024), ECF No. 46.

As the only remaining Defendants were the unnamed correctional officers, the Court directed Plaintiff to explain whether it intended to pursue his action against them. *Id*. at 7.

On April 7, 2025, Plaintiff filed a Notice of Intent to pursue his claims, but he stated he has not had the opportunity to conduct discovery to identify the correctional officers. *Pl.'s Notice of Intent* (Apr. 7, 2025), ECF No. 75. Plaintiff further represented that he anticipated learning the names of those individuals in a related state court action. *Id*. at 2. By Order entered on April 8, 2025, the Court granted Plaintiff until October 9, 2025, to identify the correctional officer. *Order*, ECF No. 76.

On October 9, 2025, Plaintiff moved to file his Second Amended Complaint, naming Corporal Williamson, Corporal Workman, Correctional Officer Adkins, and Training Officer Fred Ferguson as Defendants.[4] *Sec. Am. Compl.* (Oct. 14, 2025), ECF No. 81. As the other previously named Defendants were all terminated, Plaintiff narrowed the Second Amendment Complaint to two counts. Count One is against all the newly named Defendants for "Violations of 42 U.S.C. § 1983" for deliberate indifference and other tortious conduct, and Count II is for "Negligent/Reckless Training and Supervision-Defendant Training Officer Fred Ferguson." On October 14, 2025, the Court granted the motion to file the Second Amended Complaint. *Order*, 2025), ECF No. 80. Thereafter, Defendants filed the pending Motions to Dismiss.

## II.
## STANDARD OF REVIEW

Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts must look for "plausibility" in the complaint. 550 U.S. at 563. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a

---

[4]Training Officer Ferguson also filed a Motion to Dismiss (ECF No. 92), which remains under advisement with the Court.

formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation

marks and citations omitted). Accepting the factual allegations in the complaint as true (even when

doubtful), the allegations "must be enough to raise a right to relief above the speculative level

. . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise

a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum

expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks

and citations omitted).

     In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements

of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that

Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks

and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me

accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting

*Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual

allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet

does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a

plausible claim is stated in a complaint requires a court to conduct a context-specific analysis,

drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds

from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is

entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further

articulated that "a court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth. While legal conclusions can provide the framework of a complaint, they must be supported

by factual allegations." *Id*.

### III.
### DISCUSSION

In their motions, Defendants argue that, to the extent Plaintiff is suing them in their official

capacity, those claims must be dismissed under the Eleventh Amendment. Although Plaintiff did

not specifically indicate in the Second Amended Complaint whether Defendants were being named

in their official or individual capacities, Plaintiff makes clear in his Responses to Defendants'

motions that he is only bringing this action against Defendants in their individual capacities.

Therefore, as official capacity claims do not exist, the Court finds it unnecessary to resolve

Defendants' arguments that they must be dismissed.

Defendants also argue that the Second Amended Complaint must be dismissed because the

claims against them violate the two-year statute of limitations as Mr. Franklin died over four years

before they were named as Defendants. *See* W. Va. Code § 55-2-12(b) (setting forth two-year

statute of limitations).[5] Plaintiff, on the other hand, insists the claims are not barred because they

relate back to the date of the original Complaint pursuant to Rule 15 of the Federal Rules of Civil

Procedure. In *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022), the Fourth Circuit explained that

> [u]nder Rule 15(c), an amendment to a pleading that replaces
> or renames a party "relates back" to the original pleading

---

[5]Although Plaintiff's § 1983 does not contain a statute of limitations, it "borrow[s]" the statute of limitations from the forum state's "most analogous" statute of limitations. *Owens v. Okure*, 488 U.S. 235, 239 (1989).

when: (1) the amendment arose out of the same "conduct, transaction, or occurrence" as the original pleading; (2) "within the period set out in Rule 4(m) for serving the summons and complaint," the new party receives notice of the action such that it will not be prejudiced; and (3) the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(B)–(C).

45 F.4th at 774.[6] It is the plaintiff's burden to establish that a claim meets each of these three

requirements to establish a pleading relates back. *Covey v. Assessor of Ohio Cnty.*, 666 F. App'x

---

[6]Rule 15(c)(1) provides:

**(c) Relation Back of Amendments.**

**(1) When an Amendment Relates Back**. An amendment to a pleading relates back to the date of the original pleading when:

**(A)** the law that provides the applicable statute of limitations allows relation back;

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii)    knew or should have known that the action would have been

245, 248 (4th Cir. 2016) (stating "[a]lthough the statute of limitations is an affirmative defense

that must be established by the defendant, when relation back is required to satisfy the statute of

limitations, the burden is on the plaintiff to prove that Rule 15(c) is satisfied" (citations omitted)).

When, as here, Plaintiff seeks to substitute the John/Jane Doe Correctional Officers with named

Defendants, it must do so in accordance with Rule 15(c)(1)(C)'s requirements. Defendants argue

Plaintiff cannot meet this standard.

## A.
## Whether the Claims against
## Williamson and Adkins Relate Back

In their motion, neither Defendant Williamson nor Defendant Adkins contest that the action

against them arose under the same "conduct, transaction, or occurrence" from what was described

in the original Complaint.[7] Instead, they argue that Plaintiff's claims against them do not relate

back because they had no knowledge of the lawsuit and had no reason to know about it within the

limitation period under the Rule 15(c)(1)(C)'s third requirement. They also argue that they will be

prejudiced in attempting to defend against the action as it arose more than four years ago.

To resolve this issue, the Court first must answer what is the appropriate limitation period

for service under Rule 4(m) of the Federal Rules of Civil Procedure and then ask whether

Defendants Williamson and Adkins "(1) received notice of the action such that it would not have

prejudiced [them] 'in defending on the merits' and (2) 'knew or should have known that

[Plaintiff's] action would have been brought against [them], but for a mistake concerning the

---

brought against it, but for a
mistake concerning the proper
party's identity.

Fed. R. Civ. P. 15(c)(1).

[7]Fed. R. Civ. P. 15(c)(1)(B), in part.

proper party's identity.'" *Robinson v. Clipse*, 602 F.3d 605, 608-09 (4th Cir. 2010) (quoting

Fed. R. Civ. P. 15(c)(1)(C)). Rule 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is
> filed, the court--on motion or on its own after notice to the plaintiff--
> must dismiss the action without prejudice against that defendant or
> order that service be made within a specified time. But if the plaintiff
> shows good cause for the failure, the court must extend the time for
> service for an appropriate period.

Fed. R. Civ. P. 4(m), in part. The Fourth Circuit has explained that service must be made within

90 days of the filing of a complaint "unless good cause is shown for extending the service."[8]

*Robinson*, 602 F.3d at 608 (citing Fed. R. Civ. P. 4(m); *Skoczylas v. Fed. Bureau of Prisons*, 961

F.2d 543, 545 (5th Cir.1992)). If good cause is shown, "the court *must* grant" an extension to the

90-day period. *Gelin v. Shuman*, 35 F.4th 212, 220 (4th Cir. 2022) (italics original). Additionally,

even if good cause is not shown, the Fourth Circuit has held that "a district court possesses

discretion to grant the plaintiff an extension of time to serve a defendant with the complaint and

summons" beyond the 90-day period for service. *Id.*

In this case, it is undisputed that Defendants Williamson and Adkins were not named or

served within 90 days of September 11, 2003, when the original Complaint was filed. As stated

above, before any discovery began, PrimeCare Medical of West Virginia filed a Suggestion of

Bankruptcy, and this Court stayed this action upon agreement of Plaintiff and the WVDCR. Just

two days after the stay was lifted, the WVDCR filed a Renewed Motion to Dismiss and, within

days of the motion becoming ripe, the WVDCR moved for a stay of discovery until their Motion

to Dismiss was resolved. After being unable to agree on a Scheduling Order because the WVDCR

---

[8]When *Robinson* was decided, a plaintiff had 120 days to serve a defendant. However, the
2015 amendment to Rule 4(m) reduced the presumptive time for servicing a defendant from 120
to 90 days.

objected to discovery, the Court stayed all future deadlines until the Court had the opportunity to consider the Renewed Motion to Dismiss. Ultimately, PsiMed, Inc. was dismissed, and Plaintiff settled with PrimeCare Medical of West Virginia. The Court then granted the WVDCR's Renewed Motion to Dismiss on March 24, 2025, leaving only the John/Jane Correctional Officers as Defendants. Importantly, during this entire time, no discovery occurred and the names of the John/Jane Doe Correctional Officers remained unknown to Plaintiff. Therefore, the Court granted Plaintiff until October 9, 2025, to identify the unknown Correctional Officers or show cause why the case should not be dismissed. On October 9, Plaintiff moved to file a Second Amended Complaint with the names of the John Does. The Court granted the motion on October 14, and Defendants were served two days later. Clearly, the fact this case was stayed for bankruptcy and then the WVDCR objected to discovery so no Scheduling Order was entered for discovery to begin constitutes good cause to extend the deadline for service under Rule 4(m), which is essentially what the Court did when it gave Plaintiff time to identify the John Does or show cause why the case should not be dismissed. Therefore, in light of these facts, the Court finds service timely. *See generally* Fed. R. Civ. P. 15(c)(1)(C) advisory committee's note to the 1991 amendment explaining that "[i]n allowing a name-correcting amendment within the time allowed by Rule 4(m), [Rule 15(c)(1)(C)] allows not only the [90] days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule").

Even with this extension, however, the Court must further consider whether Defendants Williamson and Adkins will be prejudiced in defending the case on the merits. Rule 15(c)(1)(C) presents a balance between a defendant's interest in being protected by the statute of limitations and the Federal Rules of Civil Procedure's preference that disputes be resolved on the merits. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010). "A prospective defendant who

legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id*.

In this case, Defendants Williamson and Adkins both attached Affidavits to their Reply attesting that they had no knowledge of this action and had no reason to be aware that they could be named a defendant before they were served copies of the Second Amended Complaint on October 16, 2025. In fact, both of these Defendants ended their employment with the WVDCR long before the original Complaint was filed. In his Affidavit, Defendant Adkins avers that he "left his employment with the WVDCR on or about June of 2022," which was over a year before the original Complaint was filed. *Aff. of Samuel Adkins* ¶2 (Nov. 21, 2025), ECF No. 106-1. In his Affidavit, Defendant Williamson said he left his employment with the WVDCR on September 20, 2021, approximately one week after Mr. Franklin's death and nearly two years before the original Complaint was filed. *Aff. of Garrett Williamson* ¶2 (Nov. 24, 2005), ECF No. 106-2. Additionally, they both attested that:

> during and after my employment with the WVDCR, I did not receive any notice from any other agency, entity, or individual regarding the filing or potential filing of the subject lawsuit until I was served with the Second Amended Complaint . . . . [and] I was completely unaware of the subject lawsuit or the existence of a potential lawsuit against me until I was served with the Second Amended Complaint on or about October 17, 2025.

*Id.* ¶¶3, 4; *Aff. of Williamson* ¶¶6, 7. With the extension of the service period, these Defendants received timely notice, but it does not mean they will not experience prejudice defending this case on the merits given the four-year gap between the date of the event and the date of service *and* the fact they have averred they were blindsided by this lawsuit.

In support of their argument they will be prejudiced, Defendant Williamson and Adkins assert they will face substantial prejudice because they have "had no opportunity to preserve evidence, interview witnesses, or prepare their defense during the critical period following the incident in September 2021." *Reply of Defs.' Williamson and Adkins to Mot. to Dismiss Pl.'s Sec. Am. Compl.*, at 5, ECF No. 106. Defendants Williamson and Adkins maintain this situation, combined with the passage of more than four years since Mr. Franklin's death, will place them at an exceptional disadvantage in defending themselves. Plaintiff, on the other hand, argues that Defendants Williamson and Adkins will not be prejudiced because they have not missed any significant discovery proceedings, hearings, or oral arguments and all known relevant documents and evidence are available to them. In addition, Plaintiff points out Defendants Williamson and Adkins are represented by the same attorneys who represented the WVDCR.

Although Plaintiff's arguments may mitigate some prejudice Defendants Williamson and Adkins may experience, upon careful consideration, the Court finds these Defendants remain prejudiced. Merely because Plaintiff maintains all *known* documents and evidence have been preserved, there very well be documents and evidence relevant to Defendants Williamson and Adkins' defense that were not preserved. Given that Mr. Franklin died over four years ago, it will be much more difficult (and perhaps impossible in some respects) for Defendants Williamson and Adkins to gather evidence related to their defense or even recall the details of what happened, as they never had any incentive to try to remember before now. It certainly may be more challenging for any witnesses to recall the details of Defendant Williamson and Adkins' roles at the time and the events leading up to Mr. Franklin's death. As Defendants Williamson and Adkins were completely unaware of this action until recently, they had no reason to preserve any evidence they believe could assist them with their defense. While being represented by the same counsel as the

WVDCR may have value, it does not mean their counsel was protecting their particular interests before they established an attorney-client relationship a few weeks ago. As this Court previously recognized, Plaintiff has the burden to establish all the requirements for a claim to relate back, and the Supreme Court has held that adherence to the requirements of Rule 15(c) is mandatory. *See Covey*, 666 F. App'x at 248; *Krupski*, 560 U.S. at 553 (comparing the mandatory nature of Rule 15(c) to the discretion given to the court under Rule 15(a) and providing that Rule 15(c) "mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion"). In this case, the Court finds that Plaintiff has not sufficiently shown that Defendant Williamson and Adkins "will not be prejudiced in defending on the merits" pursuant to Rule 15(c)(1)(C)(i) as a result of the delay and their complete lack of knowledge the lawsuit existed. Therefore, the Court **GRANTS** Defendant Williamson and Adkins' Motion to Dismiss.

## B.
### Claim against
### Corporal Jason Workman

As with Defendants Williamson and Adkins, Defendant Workman also argues the claim against him does not relate back under Rule 15(c)(1)(C). Specifically, Defendant Workman asserts that Plaintiff has failed to provide any evidence that he knew or should have known he would be named as a Defendant in this matter. However, as previously ruled, good cause existed to extend the deadline for service under Rule 4(m) and, therefore, Defendant Workman received timely notice. Additionally, unlike Defendants Williamson and Adkins, Defendant Workman does not argue he will be prejudiced in defending this action on the merits as contemplated by Rule

15(c)(1)(C)(i). [9] Therefore, the Court rejects Defendant Workman's argument that this matter should be dismissed for violating the statute of limitations.

However, Defendant Workman also argues that the claims against him should be dismissed under qualified immunity. "Qualified immunity fundamentally concerns itself with fair notice. It shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022) (internal quotation marks and citations omitted). It is the defendant's burden to demonstrate qualified immunity applies. *Gelin v. Maryland*, 132 F.4th 700, 713 (4th Cir. 2025) (citation omitted).

As stated by the Fourth Circuit in *King v. Riley*, 76 F.4th 259 (4th Cir. 2023), typically, qualified immunity protects government officials who are sued in their individual capacity "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 264-65 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); footnote omitted). A plaintiff may overcome qualified immunity, however, by showing "(1) that the government official violated a statutory or constitutional right and (2) that right was clearly established at the time of the challenged conduct." *Id*. (citation omitted). Additionally, the Fourth Circuit has carved out an exception for deliberate indifference claims by holding that "officials who are aware that their conduct is constitutionally deficient cannot rely on the clearly established prong[.]" *Id*. (citations omitted). For instance, it is unnecessary to show a "right was clearly established" when "context makes the violation 'obvious' and case law is thus not needed to establish this awareness.'" *Id.* (citations omitted). On the other hand, if the official

---

[9] In fact, Plaintiff asserts Defendant Workman actually participated in post-incident investigations.

is unaware, the official is entitled to the two-step approach. *Id*. If the two-step approach applies, the Court may start with either question. *Gelin,* 132 F.4th at 713 (citation omitted). If the answer to either question is "no," the claim is barred by qualified immunity. *Id*.

In this case, Plaintiff argues Defendant Workman is not entitled to qualified immunity because he violated Mr. Franklin's Eighth Amendment right to adequate medical care and he deliberately ignored and did not report Mr. Franklin's obvious need for psychiatric care. Specifically, Plaintiff alleges in the Second Amended Complaint that Mr. Franklin gave Defendant Workman a note asking to be moved to suicide watch. *Sec. Am. Compl.* ¶¶26, 27. Defendant Workman did not read the entire note, but he asked Mr. Franklin why he wanted to be moved. *Id*. ¶27. In a quiet voice, Mr. Franklin told Defendant Workman that "he did not want other inmates to hear him," and "that he feared that an inmate in a neighboring cell was going to kill him." *Id*. ¶28. Defendant Workman reportedly did not ask any other questions, but he told Mr. "Franklin that no inmate can enter his locked cell." *Id*. ¶29. As stated earlier, Defendant Workman did not report or log the event, allegedly upon Defendant Ferguson's instructions. *Id*. ¶30. Plaintiff asserts Defendant Workman could have reasonably inferred Mr. Franklin was suicidal and did not want the other inmates to hear his request, but Defendant Workman ignored Mr. Franklin's obvious medical needs and history of suicidal ideation, thereby, violating the Eighth Amendment.

The Fourth Circuit explained in *King* that both an objective and subjective test must be met to show an Eighth Amendment violation of deliberate indifference. 76 F.4th at 264. Objectively, an inmate must "demonstrate a 'substantial risk of serious harm.'" *Id*. (citation omitted). Subjectively, the inmate must "show that the prison official knew about this substantial risk and recognized that their response to that risk was inadequate. That means, even with knowledge of the risk, an official who 'responded reasonably to the risk' cannot be found liable

under the Eighth Amendment." *Id*. (citations omitted). Assuming the truth of Plaintiff's allegations in this case, the Court finds Plaintiff cannot make such a showing.

Although Mr. Franklin had a history of mental health issues and had suicidal ideations in the past, the Court finds that Plaintiff's allegations do not amount to deliberate indifference on the part of Defendant Workman. When handed the note, Defendant Workman did not ignore Mr. Franklin's request, and he asked why he wanted to be moved to suicide watch. Mr. Franklin responded by saying he was afraid another inmate would kill him. He did not say that he was suicidal. Defendant Workman then made an objectively reasonable response, assuring Mr. Franklin that another inmate could not enter his locked cell and kill him. Although Plaintiff asserts Defendant Workman did not read the entire note, Plaintiff does not indicate what the rest of the note said or how it would have made a difference given Mr. Franklin's statement as to why he wanted to be placed on suicide watch. Additionally, although Plaintiff states Defendant Workman did not log the encounter or alert anyone about Mr. Franklin's request, the Court finds those failures do not arise to deliberate indifference under the facts of this case where Mr. Franklin never told Defendant Workman he actually was suicidal. Had Mr. Franklin said, "I want to kill myself," the result might be different. However, that is not what is alleged to have happened in this case, and Court finds that Plaintiff's argument that Defendant Workman should have inferred and subjectively realized Mr. Franklin wanted to kill himself is just too far of a stretch given their interaction. Therefore, the Court finds that Defendant Workman is entitled to qualified immunity and **GRANTS** his Motion to Dismiss.

## V.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Corporal Jason Workman's Motion to Dismiss (ECF No. 94) and Corporal Garrett Williamson's and Officer Samuel Adkins'

Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 96), and it **DENIES AS**

**MOOT** the Joint Motion to Stay Discovery Pending Resolution of their Motions to Dismiss. ECF

No. 112.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented parties.

ENTER:        January 7, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE